## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | |
|---|---|
| **KELLY PINN**, *on behalf of herself and all others similarly situated*,<br><br>                    *Plaintiff*,<br>   v.<br><br>**TARKENTON SENIOR SOLUTIONS, LLC,**<br><br>                    *Defendant*. | Civil Case No.: _____<br><br>**COMPLAINT - CLASS ACTION**<br><br>**JURY TRIAL DEMANDED** |

## INTRODUCTION

1.     This action arises out of Defendant, Tarkenton Senior Solutions, LLC's ("Tarkenton" or "Defendant") relentless marketing practices targeting senior citizens that violate the Telephone Consumer Protection Act, 47 U.S.C. § 227, *et seq.* ("TCPA").

2.     Tarkenton makes, or has made on its behalf, aggressive telemarketing calls to senior citizens soliciting its insurance products and services – specifically its final expense and life insurance products.

3.     These calls are made to individuals on the National Do-Not-Call Registry.

4.     Tarkenton (or its telemarketing vendor) continues to make these calls even after the called party requests that Tarkenton cease calling.

5.      The TCPA prohibits making telemarketing calls to individuals who have registered their telephone numbers on the National Do-Not-Call Registry.

6.      The TCPA also prohibits making telemarketing calls to a person who, like Ms. Pinn, has previously asked not to receive such calls and makes sellers like Tarkenton liable for calls in violation of the TCPA's internal do-not-call rules.

7.      Accordingly, Ms. Pinn brings this action on behalf of herself and classes of similarly situated individuals.

## JURISDICTION AND VENUE

8.      This Court has subject matter jurisdiction under 28 U.S.C. § 1331, as this action arises under the TCPA, which is a federal statute.

9.      This Court has jurisdiction over Tarkenton because Tarkenton is headquartered and registered to do business in this District, conducts business transactions in this District and made calls from this District as part of the business it conducts in this District.

10.     Venue is proper in this District because Defendant resides in this District and because a substantial part of the events or omissions giving rise to the claim occurred in this District.

## PARTIES

11.     Plaintiff Kelly Pinn ("Ms. Pinn") is, and at all times mentioned herein was, a citizen and resident of Texas.

2

12.     Plaintiff is, and at all times mentioned herein was, a "person" as defined by 47 U.S.C. § 153(39).

13.     Tarkenton is, and at all times mentioned herein was a limited liability company organized and existing under the laws of the state of Georgia with a principal place of business located at 3340 Peachtree Road, Suite 2300, Atlanta, Georgia 30326.

14.     Tarkenton may be served via its registered agent, Stuart Finestone, located at 3340 Peachtree Road, Suite 2540, Atlanta, Georgia 30326.

15.     Tarkenton is, and at all times mentioned herein was, a "person" as defined by 47 U.S.C. § 153(39).

## TCPA BACKGROUND

16.     In 1991, Congress enacted the TCPA to regulate the explosive growth of the telemarketing industry.  In so doing, Congress recognized that "[u]nrestricted telemarketing . . . can be an intrusive invasion of privacy[,]" and found that federal legislation was needed because "telemarketers [could] evade [state-law] prohibitions through interstate operations.'" *Mims v. Arrow Fin. Servs., LLC*, 565 U.S. 368, 372 (2012) (citations omitted).

17.     Relevant here, the TCPA establishes a national "do not call" database of numbers not to be called.  *In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 18 FCC Rcd. 14014 ("DNC

Order").

18.     These regulations are codified at 47 C.F.R. §§ 64.1200(e)(1-2).

19.     Specifically, a company may not initiate any "telephone solicitation" to a telephone subscriber "who has registered his or her telephone number on the national do-not-call registry of persons who do not wish to receive telephone solicitations that is maintained by the Federal Government." 47 C.F.R. § 64.1200(c)(2).

20.     A violation of 47 C.F.R. § 64.1200(c) carries statutory damages of $500 to $1,500 per call through § 227(c) of the TCPA.

21.     The TCPA also specifically required the FCC to "initiate a rulemaking proceeding concerning the need to protect residential telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object." 47 U.S.C. § 227(c)(1).

22.     The FCC was instructed to "compare and evaluate alternative methods and procedures (including the use of … company-specific do not call systems …)" and "develop proposed regulations to implement the methods and procedures that the Commission determines are most effective and efficient to accomplish purposes of this section." *Id.*

23.     Pursuant to this statutory mandate, the FCC established company-specific "do not call" rules. *In the Matter of Rules and Regulations Implementing the*

*Telephone Consumer Protection Act of 1991*, 7 FCC Rcd. 8752 (Oct. 16, 1992) ("TCPA Implementation Order").

24.    The FCC found that "the company-specific do-not-call list alternative is the most effective and efficient means to permit telephone subscribers to avoid unwanted telephone solicitations." *Id.* at 8765, ¶ 23.

25.    However, recognizing that an honor system would probably be insufficient, the FCC found that it "must mandate procedures for establishing company-specific do-not-call lists to ensure effective compliance with and enforcement of the requirements for protecting consumer privacy." *Id.* at ¶ 24.

26.    These regulations are codified at 47 C.F.R. § 64.1200(d)(1)-(7).

27.    Specifically, these regulations require a company to keep a written policy, available upon demand, for maintaining a do-not-call list, train personnel engaged in telemarketing on the existence and use of its internal do-not-call list, and record and honor "do not call" requests for no less than five years from the time the request is made. 47 C.F.R. § 64.1200(d) (1, 2, 3, 6).

28.    These policies and procedures prohibit a company from making calls for telemarketing purposes[1] unless they have implemented these policies and

---

[1]  The distinction between the use of "telephone solicitation" in relation to the national do-not-call database and calls for "telemarketing purposes" in relation to the company-specific do-not-call list is significant. "Telephone solicitation" excludes calls made to a person with whom the company has as established business relationship, 47 CFR 64.1200(f)(14), which can be established by a "voluntary two-

procedures. 47 C.F.R. § 64.1200(d).

29.    Accordingly, all telemarketing calls violate the TCPA, unless Defendant can demonstrate that it has implemented the required policies and procedures.

30.    There is a private right of action to enforce 47 C.F.R. § 64.1200(d) through § 227(c):

> Section 227(c)(5)… empowers 'any person' to sue for damages and injunctive relief for do-not-call violations 'by or on behalf of' a company. In accordance with this statutory provision, the Commission's company-specific do-not-call rules provide that '[n]o person or entity shall initiate any call for telemarketing purposes to a residential telephone subscriber unless such person or entity has instituted procedures for maintaining a list of persons who request not to receive telemarketing calls made by or on behalf of that person or entity[.]' 47 C.F.R. § 64.1200(d).

*In re Dish Network*, 28 FCC. Rcd. 6574, ¶ 29 (2013)

31.    These requirements are separate but cumulative.  In other words, a company must comply with both the procedures for the company specific do-not-

---

way communication". 47 CFR 64.1200(f)(5). But this business relationship can be terminated by a "do not call" request. 47 CFR 64.1200(f)(5)(i). "Telemarketing purposes", on the other hand, includes any calls made for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services, regardless of any consent or established business relationship. 47 CFR 64.1200(f)(12). In other words, prior to making any telemarketing calls to anyone, regardless of relationship, a company must implement the company-specific do-not-call regulations, but it only need to comply with the national do-not-call registry provisions with respect to persons with whom it does not have an existing established business relationship.

call list *and* the procedures for complying with the national "do not call" database regulations.  A failure to comply with either is a distinct violation of 47 U.S.C. § 227(c).

32.    Though some of these requirements mention "residential" telephones, they were all extended to cover calls to cellular telephones that are used for residential purposes. 47 CFR. § 64.1200(e).

33.    Further, a person or entity can be liable for calls made on its behalf in violation of the TCPA, even if that person or entity did not directly dial such calls. *See, e.g., In re Rules & Regs. Implementing the TCPA*, 10 FCC Rcd. 12391, 12397 ¶ 13 (1995) (explaining that the FCC's "rules generally establish that the party on whose behalf a solicitation is made bears ultimate responsibility for any [TCPA] violations").  In fact, in May 2013, the FCC issued a binding declaratory ruling clarifying that sellers "may be held vicariously liable under federal common law principles of agency for TCPA violations committed by third-party telemarketers . . . under a broad range of agency principles, including not only formal agency, but also principles of apparent authority and ratification."  *In re Joint Petition Filed by DISH Network, LLC et al. for Declaratory Ruling Concerning the TCPA Rules*, 28 FCC Rcd. 6574, 6584 ¶28 (2013).

34.    Accordingly, an entity can be liable under the TCPA for a prohibited call made on its behalf under a number of theories including vicarious liability.

Under those circumstances, the seller is properly deemed to have initiated the call through the person or entity that actually placed the call.

## FACTUAL ALLEGATIONS

35.    Ms. Pinn is the sole and customary user of a cellular telephone number (XXX)-XXX-2161.

36.    Ms. Pinn's cellular telephone number (XXX)-XXX-2161 is used for residential purposes and is not associated with a business.

37.    Ms. Pinn's cellular telephone number (XXX)-XXX-2161 has been on the National Do-Not-Call Registry since February 9, 2009.

38.    Ms. Pinn personally placed her cellular telephone number (XXX)-XXX-2161 on the National Do-Not-Call Registry because she did not want unsolicited telemarketing calls, such as the ones at issue here.

39.    On or about February 23, 2024, Ms. Pinn began receiving telemarketing calls from Tarkenton, or an authorized third-party calling on Tarkenton's behalf soliciting her to purchase final expense and life insurance.

40.    For example, on February 23, 2024, Ms. Pinn received a call from telephone number (817) 962-3405.

41.    When she answered, the telemarketer identified himself as "Zach" and explained he was calling about senior benefits and began soliciting her with final expense insurance.

42.    Ms. Pinn stated that she was not interested and requested that Zach stop calling her.

43.    On February 26, 2024, Ms. Pinn received another call from Tarkenton, or an authorized third-party calling on Tarkenton's behalf.

44.    This call came from telephone number (713) 918-8408.

45.    When she answered, the telemarketer identified himself as "Zach" and explained he was calling about senior benefits and began soliciting her with final expense insurance.

46.    Again, Ms. Pinn stated that she was not interested and requested that Zach stop calling her.

47.    Later on February 26, 2024, Ms. Pinn received another call from Tarkenton, or an authorized third-party calling on Tarkenton's behalf.

48.    When she answered, a telemarketer explained he was calling about senior benefits and began soliciting her with final expense insurance.

49.    Since her previous attempts to request the calls stop were not successful, she engaged with the caller in an attempt to determine the caller's identify.

50.    The caller asked Ms. Pinn questions seeking to gather information from her to qualify her for an insurance policy, such as her age, whether she could make her own decisions (i.e., mental ability), her location, her zip code and who her

beneficiary would be on the policy.

51.    The caller transferred Ms. Pinn to a supervisor named "Justin".

52.    Ms. Pinn explained to Justin that she did not want these calls, requested no further calls and that her number be removed from the calling list.

53.    On March 6, 2024, Ms. Pinn received another call from Tarkenton, or an authorized third-party calling on Tarkenton's behalf.

54.    When she answered, the telemarketer identified herself as "Jasmine" and explained she was calling about senior benefits and began soliciting her with final expense insurance.

55.    Jasmine transferred Ms. Pinn to her supervisor, "Mark" who asked Ms. Pinn additional questions before he transferred Ms. Pinn to "his state licensed agent".

56.    Mark transferred the call to Sherri Hellman, Tarkenton's Senior Sales Director.

57.    Ms. Hellman's LinkedIn bio explains that Tarkenton is "new to the Senior Market" and that she is helping Tarkenton start this business.

58.    Ms. Hellman began soliciting Ms. Pinn with final expense insurance and gathered additional information from her.

59.    Ms. Hellman explained that she worked for Tarkenton.

60.    Ms. Hellman texted Ms. Pinn a copy of her insurance license number and business card.

61.    Ms. Pinn did not provide prior express invitation or permission or consent for these telephone calls.

62.    To the contrary, in response to the unwanted calls, Ms. Pinn repeatedly requested that they stop and to be added to Tarkenton's internal do-not-call list.

63.    Upon information and belief, Tarkenton did not have written do-not-call policies or procedures at the time of the calls it made to Ms. Pinn and the classes defined below.

64.    Alternatively, whatever written policies existed either failed to comply with the minimum requirements under the TCPA, 47 C.F.R. § 64.1200(d), were unreasonable or were never properly implemented—including as evidenced by the continued telephone calls to Ms. Pinn after she directly asked not to be contacted on numerous occasions.

65.    Tarkenton's violations were, at a minimum, negligent.

66.    Alternatively, Tarkenton's violations were willful and knowing because Tarkenton knew that Ms. Pinn's telephone number was registered on the National Do-Not-Call registry, and because Ms. Pinn expressly, and repeatedly, told Tarkenton to stop calling her on many of the calls.

67.    Tarkenton will continue to violate the TCPA and ignore consumers' privacy rights unless and until it is enjoined from doing so.

68.    Ms. Pinn and the classes were damaged by the violations alleged herein.

In addition to using their cellular data, storage, and battery life, they suffered an invasion of privacy, aggravation, annoyance, frustration, distraction, intrusion upon seclusion, and violations of their substantive statutory rights under the TCPA to remain free of unsolicited calls.  Their privacy was improperly invaded, the Tarkenton calls temporarily seized and trespassed upon the use of their phones, and/or they were forced to divert attention away from other activities, including work, family, and personal activities, to address the unwanted telephone calls. Tarkenton's telephone calls were annoying and a nuisance and wasted the time of Ms. Pinn and the class members.  *See, e.g., Mims,* 565 U.S. at 372 (discussing congressional findings of consumer "outrage" as to prerecorded calls).

69.    Because Ms. Pinn and Class Members continued to receive calls from, or on behalf of, Tarkenton, on their DNC registered numbers, and after they revoked any conceivable consent, it demonstrates the need for judicial intervention and injunctive relief to enjoin any continued and future harm.

## DEFENDANT'S LIABILITY

70.    Tarkenton used automated systems to make outbound telephonic sales calls to hundreds if not thousands of consumers across the U.S., including to consumers whose phone numbers are listed on the National Do-Not Call Registry.

71.    Tarkenton made two or more telephone solicitations to Ms. Pinn, whose number was on the National Do-Not-Call Registry at the time of the telephone calls.

This constitutes a violation of 47 U.S.C. § 227(c) through 47 C.F.R. § 64.1200(c).

72.    Accordingly, for violations of 47 C.F.R. § 64.1200(c), Ms. Pinn is entitled to $500 per call through 47 U.S.C. § 227(c).

73.    Ms. Pinn is entitled to $1,500 per call if Tarkenton's actions are found to be knowing or willful.

74.    Tarkenton, directly, individually, jointly, and/or in concert with another, or through other persons, entities or agents acting on its behalf, conspired to, agreed to, contributed to, authorized, facilitated, assisted with, ratified, turned a blind eye to, and/or otherwise caused all of the wrongful acts and omissions, including the dissemination of the unsolicited calls that are the subject matter of this Complaint.

75.    To the extent Tarkenton outsourced its robocalling, it is still liable for calls that violate the TCPA.

76.    Tarkenton is liable for third-parties' actions because it took steps to cause the calls to be made, and because the calls were made pursuant to its actual authority, apparent authority and/or ratification, or pursuant to joint enterprise or acting in concert liability.

77.    On May 9, 2013, the FCC's Declaratory Ruling confirmed that sellers may not avoid liability by outsourcing telemarketing:

[A]llowing the seller to avoid potential liability by outsourcing its telemarketing activities to unsupervised third parties would leave consumers in many cases without an effective remedy for telemarketing intrusions. This would particularly be so if the telemarketers were judgment proof, unidentifiable, or located outside of the United States, as is often the case. Even where third-party telemarketers are identifiable, solvent, and amenable to judgment limiting liability to the telemarketer that physically places the call would make enforcement in many cases substantially more expensive and less efficient, since consumers (or law enforcement agencies) would be required to sue each marketer separately in order to obtain relief. As the FTC noted, because "[s]ellers may have thousands of "independent" marketers, suing one or a few of them is unlikely to make a substantive difference for consumer privacy.

78.    *In re Joint Petition Filed by DISH Network, LLC et al. for Declaratory Ruling Concerning the TCPA Rules, 28 FCC Rcd. 6574, at ¶ 37 (2013) ("FCC 2013 Ruling"),* 28 FCC Rcd at 6588 (¶37) (internal citations omitted).

79.    Moreover, the *May 2013 FCC* Ruling rejected a narrow view of TCPA liability, including the assertion that a seller's liability requires a finding of formal actual agency and immediate direction and control over third parties who place a telemarketing call. *Id.* at 6587 n. 107.

## CLASS ACTION ALLEGATIONS

80.    Plaintiff brings this action under Fed. R. Civ. P. 23(b)(3) and LR 23.1 on behalf of a proposed "Class," as defined as follows:

## THE DNC CLASS

Plaintiff and all persons within the United States to whose telephone number Defendant placed (or had placed on its behalf) two or more

telemarketing calls in a 12-month period when the telephone number to which the telephone calls were made was on the National Do-Not-Call Registry for more than 30 days at the time of the calls from four (4) years prior to the filing of the Complaint.

(the "DNC Class")

## **THE INTERNAL CLASS**

All persons within the United States who, within the four years prior to the filing of the original Complaint through the date of class certification, (1) received two or more calls within any 12-month period, (2) encouraging the purchase of Defendant property, goods, or services, (3) to said person's residential telephone number, (4) after requesting that Defendant or Defendant's vendor's stop calling or making similar request.

(the "Internal DNC Class")

81.    Excluded from the Classes are Defendant and any entities in which Defendant has a controlling interest; Defendant's agents and employees; any Judge and Magistrate Judge to whom this action is assigned and any member of their staffs and immediate families, and any claims for personal injury, wrongful death, and/or emotional distress.

82.    The Members of the Classes for whose benefit this action is brought are so numerous that joinder of all members is impracticable.

83.    The Defendant's records will reveal the precise number of class members.

84.    The exact number and identities of the persons who fit within the Classes are ascertainable in that Defendant's and third parties' maintain written and electronically stored data showing:

   a.  The time period(s) during which Defendant or its agent(s) made the telephone calls;

   b.  The telephone numbers to which Defendant or its agent(s) made telephone calls;

   c.  The telephone numbers for which Defendant had prior express written consent;

   d.  The purposes of such telephone calls; and

   e.  The names and addresses of Class members.

85.    The Class is comprised of hundreds, if not thousands, of individuals.

86.    There are common questions of law and fact affecting the rights of the Members of the Class, including, *inter alia*, the following:

   a.  Whether Defendant (or someone acting on its behalf) makes telemarketing calls;

   b.  Whether Defendant (or someone acting on its behalf) obtains prior express written consent;

c. Whether Defendant or the entities with which it contracts make solicitation calls and to telephone numbers registered on the National Do-Not-Call Registry;

d. Whether Defendant had "prior express consent" under the TCPA to call the cell phone numbers of Plaintiff and Class Members;

e. Whether Defendant's statutory violations were willful and knowing; and

f. Whether Defendant should be enjoined from engaging in such conduct in the future.

87.    Plaintiff is a member of the Class in that Defendant placed two or more calls for telemarketing purposes, in a one-year period to her telephone number, without her prior express written consent, while her telephone number was on the National Do-Not-Call Registry.

88.    Plaintiff's claims are typical of the claims of the Members of the Class in that they arise from Defendant's uniform conduct and are based on the same legal theories as these claims.

89.    Plaintiff and all putative Members of the Class have also necessarily suffered concrete harm in addition to statutory damages, as all Members of the Classes spent time tending to Defendant's unwanted calls and suffered a nuisance and an invasion of their privacy.

90.     Plaintiff has no interests antagonistic to, or in conflict with, the Class.

91.     Plaintiff is an adequate representative of the Class and will thoroughly and adequately protect the interests of the Class, having retained qualified and competent legal counsel to represent her and the Class.  Plaintiff is prepared to participate in discovery and depositions and otherwise fulfill her obligations as a class representative.

92.     Defendant has acted and refused to act on grounds generally applicable to the Class, thereby making injunctive and declaratory relief appropriate for the Class.

93.     The prosecution of separate actions by individual class members would create a risk of inconsistent or varying adjudications.

94.     A class action is superior to other available methods for the fair and efficient adjudication of the controversy since, *inter alia*, the damages suffered by each class member make individual actions uneconomical.

95.     Common questions will predominate, and there will be no unusual manageability issues.

### COUNT I
### Violations of the TCPA, 47 U.S.C. § 227(c)
### (On Behalf of Plaintiff and the DNC Class)

96.     Defendant made, or had made on its behalf, telephone solicitations to Plaintiff's and putative Class Members' telephone numbers as set forth above.

97.    Plaintiff's and putative Class Members' telephone numbers were all on the National Do-Not-Call Registry at the time of the calls.

98.    Plaintiff and putative Class Members each received two or more such calls in a 12-month period.

99.    Plaintiff and putative Class Members are entitled to an award of $500 in statutory damages for each telephone solicitation call pursuant to 47 U.S.C. § 227(c)(5).

100.    Plaintiff and putative Class Members are entitled to an award of treble damages in an amount up to $1,500 for each telephone solicitation call made knowingly and/or willfully, pursuant to 47 U.S.C. § 227(c)(5).

WHEREFORE, Plaintiff respectfully requests the Court grant Plaintiff and the Class members relief against Defendant as set forth in the Prayer for Relief below.

## COUNT II
## VIOLATIONS OF 47 U.S.C. § 227 and 47 C.F.R. § 64.1200
### (On Behalf of Plaintiff and the Internal DNC Class)

101.    In pertinent part, 47 C.F.R. § 64.1200(d) provides:

> No person or entity shall initiate any call for telemarketing purposes to a residential telephone subscriber unless such person or entity has instituted procedures for maintaining a list of persons who request not to receive telemarketing calls made by or on behalf of that person or entity. The procedures instituted must meet the following minimum standards:
>
> **(1)    *Written policy*.** Persons or entities making calls

19

for telemarketing purposes must have a written policy, available upon demand, for maintaining a do-not-call list.

**(2)    *Training of personnel engaged in telemarketing*.** Personnel engaged in any aspect of telemarketing must be informed and trained in the existence and use of the do-not-call list.

**(3)    <u>Recording, disclosure of do-not-call requests.</u>** If a person or entity making a call for telemarketing purposes (or on whose behalf such a call is made) receives a request from a residential telephone subscriber not to receive calls from that person or entity, the person or entity must record the request and place the subscriber's name, if provided, and telephone number on the do-not-call list at the time the request is made. Persons or entities making calls for telemarketing purposes (or on whose behalf such calls are made) must honor a residential subscriber's do-not-call request within a reasonable time from the date such request is made. This period may not exceed thirty days from the date of such request. If such requests are recorded or maintained by a party other than the person or entity on whose behalf the telemarketing call is made, the person or entity on whose behalf the telemarketing call is made will be liable for any failures to honor the do-not-call request. A person or entity making a call for telemarketing purposes must obtain a consumer's prior express permission to share or forward the consumer's request not to be called to a party other than the person or entity on whose behalf a telemarketing call is made or an affiliated entity.

*               *               *

**(6)    *Maintenance of do-not-call lists.*** A person or entity making calls for telemarketing purposes must maintain a record of a consumer's request not to receive further telemarketing calls. A do-not-call request must be honored for 5 years from the time the request is made.

47 C.F.R. § 64.1200(d)(1)-(3),(6).

102.   Pursuant to 47 C.F.R § 64.1200(e), the rules set forth in 47 C.F.R. § 64.1200(d) are applicable to any person or entity making telephone solicitations or telemarketing calls to wireless telephone numbers.

103. Plaintiff and the Internal DNC Class members made requests to not receive future solicitations.

104. Defendant failed to honor Plaintiff's and the Internal DNC Class members' opt-out requests.

105. As outlined in detail above, Defendant has violated the requirements of section 64.1200(d) by failing to (1) maintain the required written policies; (2) provide any training to their personnel engaged in telemarketing; (3) maintain an internal do- not-call list and honor consumer opt-out requests; and (4) honoring opt-out requests.

106. Pursuant to section 227(c)(5) of the TCPA, Plaintiff and the Internal DNC Class members are entitled to an award of $500.00 in statutory damages, for each call sent by, or on behalf of, Defendant.

107. To the extent Defendant's misconduct is determined to be willful and knowing, the Court should treble the amount of statutory damages recoverable by the members of the Internal DNC Class.

108. Plaintiff and the Internal DNC Class members also seek injunctive relief prohibiting Defendant's illegal conduct in the future, pursuant to section 227(c)(5).

WHEREFORE, Plaintiffs respectfully request the Court grant Plaintiff and the Class members relief against Defendant as set forth in the Prayer for Relief below.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, individually and on behalf of the Classes, prays for the following relief:

A.     An order certifying the Classes as defined above, appointing Plaintiff as the representative of the Classes and appointing her counsel as Class Counsel;

B.     An order declaring that Defendant's actions, as set out above, violate the statutes referenced herein;

C.     An award of injunctive and other equitable relief as necessary to protect the interests of the Classes, including, *inter alia*, an order prohibiting Defendant from engaging in the wrongful and unlawful acts described herein;

D.     An award of statutory damages;

E.     An award of treble damages; and

F.     Such other and further relief that the Court deems reasonable and just.

## JURY DEMAND

Plaintiff requests a trial by jury of all claims that can be so tried.

**Dated:** May 6, 2024

*/s/John A. Love*_____
John A. Love, Esq.
GA Bar No. 455159
Love Consumer Law
2500 Northwinds Parkway
Suite 330
Alpharetta, Georgia 30009
Tel: (404) 855-3600
Fax: (404) 301-2300
tlove@loveconsumerlaw.com


Max S. Morgan, Esquire*
**THE WEITZ FIRM, LLC**
1515 Market Street, #1100
Philadelphia, PA 19102
Tel: (267) 587-6240
Fax: (215) 689-0875
max.morgan@theweitzfirm.com


(*pro hac vice application forthcoming)